**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| KAABOOWORKS SERVICES, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| BRIAN PILSL, | ) | **COMPLAINT** |
| | ) | |
| *Defendant.* | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Comes now, KAABOOWorks Services, LLC ("KAABOO" or "the Company") and

complains as follows:

## NATURE OF THE CASE

1.     KAABOO is the first of its kind organizer and manager of what the Rolling Stone

called "the Ultimate Entertainment Mix-perience" and Consequence of Sound described as "a unique

spin on what a festival could be." The first live-music and adult culture festival under the KAABOO

brand was held in Del Mar, California in 2015. This yearly festival is unique in that it combines

music, comedy, art and culinary experiences with upscale features such as cabanas, spa-like

indulgences, an on-site swimming pool, and a variety of other services not generally available at

typical music festivals. It has been extremely successful due to its ability to create a unique upscale

experience for the attendees and attract large corporate partners and group sales clients, "that is so

much different than any other festival out there" according to Huffpost. Corporate partnership and

business development is a profitable business unit at KAABOO. KAABOO's unique system has led

to industry-leading spending per capita on corporate sponsorships and food and beverage.  As a result of its unique system of operating which is the secret to its success, KAABOO is in the process of expanding into other geographic markets.

2.      Brian Pilsl ("Pilsl") worked for KAABOO as the Senior Vice President of Business Development from October 1, 2015 until October 10, 2017.  When he joined Plaintiff, the employment offer letter that he signed informed him that he will be required to execute a confidentiality agreement as a condition of his employment at KAABOO. He also agreed to be bound by KAABOO's confidentiality policy contained in its employee handbook. Moreover, during his employment at KAABOO, as a supervisor, he was responsible for making sure that his direct reports signed confidentiality agreements with KAABOO and employee handbook acknowledgment forms.  Even prior to working for KAABOO as an employee, Pilsl signed a non-disclosure agreement with KAABOO on behalf of his company that provided consulting services to KAABOO in the corporate sponsorship arena.

3.      During his employment at KAABOO, Pilsl  had access to the entire attendee list for the festival, the festival budget information, and the information about the pricing and other terms offered to the potential and existing corporate partners and group sales clients. This information was not public and would be of immense economic value to KAABOO's competitors in the festival industry.

## PARTIES

4.      Plaintiff KAABOOWorks Services, LLC ("KAABOO" or "Plaintiff") is a Delaware limited liability company with its principal place of business at 5619 DTC Parkway, Suite 800, Greenwood Village, Colorado, 80111.

5.      All members of KAABOO are Delaware limited liability companies whose members are citizens of Colorado or California.

6.      Defendant Brian Pilsl ("Pilsl") is a citizen and resident of Florida residing as 11213 Green Park Circle, Tampa, Florida 33626.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendant because the acts alleged occurred, in whole or in part, within the Court's District.

8.      This Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331.

9.      This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the amount in controversy, upon information and belief, exceeds $75,000.00 and the Parties are citizens of different states/territories.

10.     This Court has supplemental jurisdiction over Plaintiff's state-based claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution ("U.S. Const.").

11.     Venue is properly placed in this District, pursuant to 28 U.S.C. § 1391(b), because the facts and events giving rise to Plaintiff's claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### A.      KAABOO's Business and Trade Secrets and Confidential Information

12.     KAABOO is a Colorado-based live-music and entertainment company focused on organizing and managing high-end music and adult culture festivals targeted to an audience of 25 years to 60 years of age.  The first KAABOO festival debuted in Del Mar, California in 2015, and

was so successful that the Company is in the process of expanding into other geographic markets. With upscale amenities, private cabanas, concierge service, gourmet food and drinks, surfing lessons, massages, a Las Vegas-styled "day club," and a swimming pool overlooking one of the main stages – the festival has attracted attendees, group sales clients, and corporate partners from all over the country.

13.     KAABOO fiercely protects the proprietary information about its business and its unique system of operating that has made it successful in a highly-competitive festival market. Each year, long before the next year's festival is to take place, KAABOO negotiates contracts with partners for the upcoming event, and begins the process of identifying additional prospective partners. While the corporate logos of the partners can be found on KAABOO's website, the names of the decision-makers within such organizations and the terms of their contracts with KAABOO are kept confidential. The names of the prospective partners and group sales clients, as well as any information learned during negotiations with such parties, is also considered proprietary by KAABOO.   KAABOO includes confidentiality clauses in all of its agreements with corporate partners.  The names of prospective corporate partners and the financial information related to the existing corporate partners is not available to the public and would be of immense economic value to KAABOO's competitors in the festival industry.

14.     All of the financial information related to KAABOO's festival, including, but not limited to, pricing strategies, production costs, budgets, the terms of the vendor contracts, revenue, expenses, media buy rates, and other financial information related to the organization of the festival is considered proprietary by KAABOO and is not disclosed to the public.

15.    KAABOO protects it confidential information and trade secrets in the following manner:  (1) KAABOO employees are notified in the employment offer letter that they will be required to sign a confidentiality agreement; (2) KAABOO employees are required to execute confidentiality agreements; (3) KAABOO provides only restricted access to various files on its Google drive; (4) KAABOO employees can access certain files on a restricted basis only after entering a Company-provided login and password; (5) KAABOO requires employees to read its Employee Handbook, which contains a confidentiality policy and provides an acknowledgment that they will agreed to abide by that policy; (6) upon employees' termination of employment, their access to Company files on Google drive is immediately cut off; (7) KAABOO requires its employees to certify that they have returned all confidential information and trade secrets to KAABOO upon their termination of employment; (8) KAABOO requires that all of its consultants and independent contractors sign non-disclosure agreements; and (9) KAABOO includes non-disclosure obligations in all of its contracts with corporate partners.

16.    During his employment at KAABOO, Pilsl  had access to many of the categories of the confidential information and trade secrets identified above.  He also specifically had access to the following confidential information and trade secrets: (1) the entire attendees list for the festival, including their contact information, preferences, and demographic information; (2) the festival budget information; (3) the names of prospective corporate partners; (3) information about the pricing and other deal terms offered to the existing corporate partners; (4) analyses of the festival results; (5) prospective locations and plans for expansion of the KAABOO brand; (6) hospitality pricing information; (7) contract templates for hospitality, culinary, and corporate partnerships; (8) sales team reports; (9) strategies for identifying corporate partners; (9) payment and financial

information related to corporate partners; (10) information related to specific needs and preferences of the corporate partners; and (11) sponsorship pricing, sales data and sales strategy.

17.     Pilsl received a lot of this information during his frequent trips to Colorado, when he attended meetings with other KAABOO employees and executives to discuss the marketing strategy and different aspects of festival planning.  In the course of his employment, he also participated in numerous conference calls with KAABOO's employees in Colorado, during which he learned confidential information and trade secrets of KAABOO.

### B.     Pilsl's Confidentiality Obligations with KAABOO

18.     In 2014, Pilsl's consulting company, Sprocket Marketing LLC ("Sprocket"), entered into a sponsorship services agreement with KAABOO and an affiliated company to assist with in the corporate sponsorship arena. As part of that agreement, Sprocket, and its employees, including Pilsl, agreed not to disclose any of KAABOO's confidential information that they would learn during that engagement.

19.     In 2015, KAABOO hired Pilsl as a Senior Vice President of Revenue Management, which later changed to Senior Vice President, Business Development.  His employment offer letter stated that he will be required to execute a confidentiality agreement with KAABOO as a condition of his employment. He also received a copy of KAABOO's employment handbook, which explained what information KAABOO considered confidential and prohibited employees from using or disclosing such information. Specifically, the employee handbook stated the following:

- employees during the course of their work. This Handbook, for example, contains proprietary information. Confidential information is any Company information that is not known generally to the public or to the industry. Such information may include, but is not limited to: client lists, client records and

information (including credit card information and numbers), any wiring or banking instructions, personnel files, computer records, financial and marketing data, process descriptions, and trade secrets. Confidential information also includes information provided to the Company by third parties (such as attendees or investors) with an expectation that it will be treated in a confidential manner. Given the nature of the Company's business, protecting proprietary and confidential information is of vital concern to the Company and its clients.

- Employees' Obligations. Employees must not use or disclose any proprietary or confidential information they obtain during their employment with the Company, except as required by their jobs or as instructed by the Chairman and CEO or President. These obligations remain with employees even after their employment relationship with the Company ends. Employees who gain access to confidential information may not use such confidential information for their own direct or indirect personal gain, or for the gain of any other party, either during or after their employment with the Company. Employees are subject to separate Confidentiality Agreements, which more specifically set forth the limitations.

20.     The employee handbook also clearly stated that KAABOO employees are required to immediately return the Company's confidential information and trade secrets upon termination of their employment:

- On termination of employment, whether voluntary or involuntary, or at such earlier time as the Company may request, all Company documents, computer records, and other tangible Company property in the employee's possession or control must be returned to the Company. Employees also must remove all confidential Company information from their personal electronic devices, computer equipment and personal accounts, including any flash drives, SmartPhones, personal email accounts, cloud-based storage, cell phones, and related items.

21.     As a supervisor, Pilsl knew about this policy, agreed to it, and was responsible for having his direct reports read the policy and execute the handbook acknowledgement forms.  He was also responsible for making sure that his employees executed confidentiality agreements with KAABOO.

22.     For example, on October 3, 2016, KAABOO hired Pilsl's wife to work under Pilsl as a Director of Partnership Activation.  Her offer letter, which she signed and acknowledged, stated that she agreed that as a condition of her employment with KAABOO, she had to execute and return KAABOO's confidentiality agreement.  She also executed a non-competition and non-solicitation agreement with KAABOO which stated the following:

- Employee acknowledges and agrees that the Confidential Information is solely the property of the Company Group and is worth the Company Group's protection, that the covenants contained in this Agreement are a reasonable means to provide such protection, and that Employer would not employ Employee or continue to employ Employee or provide Employee with such Confidential Information without the agreements of Employee contained herein. Employee further agrees that the unauthorized use and/or disclosure of Confidential Information to any Competitor (as defined below) of Employer or any member of the company Group could provide such Competitor with a competitive advantage over Employer and/or any member of the Company Group.

- "Confidential Information" means any information (whether in paper or electronic form, contained in Employee's memory, or otherwise stored or recorded), including but not limited to trade secrets, that is not generally known and relates to the Company Group's Business or to its actual or demonstrably anticipated research or development, if such information is not readily disclosed by inspection of the Company Group's products and services, and if it has been expressly or implicitly protected by the Company Group from unrestricted use by persons not associated with the Company Group.  Confidential Information includes, but is not limited to, information relating to the manner and details of the Company Group's operation, organization and management; products; manuals; procedures; techniques; plans of any kind, including without limitation, strategic, short-term, litigation-related marketing and transaction-related; security measures; artwork; valuation methods; graphic designs; passwords; security codes; best practices; business systems and processes; projects; innovations; and research and technology of any kind; any information regarding persons who have or have had relations with the Company Group, including past, existing or prospective business contacts; actual or prospective customer and client lists and related information; client tracking data; information regarding the Company Group's vendors, brokers, investors, experts, consultants, contractors, customers and professionals (including those persons who are principals, partners (general or limited), members, officers, directors,

employees, and agents of the Company Group); personnel information; artists contact information, desires and preferences for appearances/performances; artist fees and cost information; analyses of location and performance space; business/brand partnerships or sponsorship, public relations, marketing, and media information; productions costs; existing and potential sponsor information, including contact names; all agreements entered into or contemplated by the Company Group; all products and formulas developed by or for the Company Group, sold by the Company Group or used in the Company Group's Business; programs, databases and computer systems of all kinds, including the data maintained on such systems, as well as the software, hardware and documentation supporting such databases or computer systems; product development information; projections and forecasts; information regarding ownership, storage and valuation of client artwork; finance and tax information; budgets; payroll and benefits information; accounting data; profit margins; pricing issues and concessions; payment and credit terms and history; accounts receivable and payable information; acquisitions and target information; negotiation notes and strategies; prospective buyer or seller information; and information concerning legal actions and threatened legal actions, claims, information generated, modified, or obtained by Employee during Employee's employment and information of the Company Group's affiliates, distributors, customers, vendors, consultants, contractors, partners, members, shareholder, investors, employees, and other third parties that was disclosed or entrusted to the Company Group or to Employee in the course of business with the expectation of confidentiality.

23.     Therefore, when Pilsl left KAABOO, he was fully aware of what Plaintiff considered confidential and his obligations with respect to such information after he left KAABOO.

### C.     Pilsl's Termination

24.     KAABOO terminated Pilsl's employment with KAABOO on October 10, 2017. At that time, he was asked to sign a certification acknowledging that he had returned all KAABOO property in his possession, including confidential, proprietary, and trade secrets information, in any form (electronic and hard copy) and that he did not keep copies of such information. Pilsl refused to sign the certification. He also told the CEO of KAABOO that he was planning to restart Sprocket.

Without a doubt, the information Pilsl learned while working for KAABOO would be very valuable to Sprocket, which specializes in corporate sponsorships.

25.     On October 20, 2017, KAABOO emailed Pilsl at his personal email address reminding him again that he had a duty to return KAABOO's property, including its confidential information and trade secrets and requesting that he do so.  Pilsl has not done so.  Upon information and belief, Pilsl remains in possession of KAABOO's trade secrets and confidential information.

### COUNT I
**(Violation of the Colorado Trade Secrets Act – C.R.S. § 7-74-101 *et seq.*)**

26.     KAABOO incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

27.     KAABOO stores its financial information, information related to prospective and current partners, attendees, and vendors, marketing strategies, future business development plans, artists' and  performers' information, and documents related to the know-how gained from organizing, marketing, and managing prior KAABOO festivals, on the system, access to which is password-protected and restricted. Furthermore, access to this information is granted only on a restricted basis.

28.     This information is not readily ascertainable or generally known in the industry and gives KAABOO an economic advantage over its competitors.

29.     KAABOO has engaged in reasonable efforts to maintain the confidentiality of the subject information.  In addition to storing this information on a password-protected and restricted network, KAABOO has also sought to protect its confidential nature by limiting its employees' use of the information through confidentiality policies and agreements prohibiting the disclosure of such information to third parties.

30.     KAABOO's financial information, information related to prospective and current partners and group sales clients, attendees and vendors, marketing strategies, future business development plans, and the know-how gained from organizing, marketing, and managing prior KAABOO festivals, therefore, constitute trade secrets under the Colorado Trade Secret Act.

31.     In his capacity as a Senior Vice President of Business Development at KAABOO, Pilsl had access to KAABOO's trade secrets and confidential information.

32.     Upon information and belief, Pilsl has acquired KAABOO's trade secrets by improper means in breach of his confidentiality obligations and has disclosed and/or is using KAABOO's trade secrets.

33.     As a direct and proximate result of Pilsl's misappropriation of trade secrets, KAABOO has suffered and will continue to suffer, irreparable harm, as well as damages to be proven at trial, but, upon information and belief, at least more than $75,000.

34.     Because KAABOO's remedy at law is inadequate, KAABOO seeks preliminary and permanent injunctive relief. KAABOO is threatened with use and disclosure of its confidential information and trade secrets and with losing its attendees, corporate partners and group sales clients, and its competitive advantage and good will in an amount that may not be possible to determine. Thus, Pilsl must be restrained from use and disclosure of KAABOO's trade secrets, and must be compelled to return KAABOO's trade secrets and confidential information to KAABOO.

35.     Pilsl's actions are willful and malicious, thereby entitling KAABOO to recover punitive damages and an award of attorneys' fees.

<u>**COUNT II**</u>
**(Violation of the Defend Trade Secrets Act 18 U.S.C. § 1832)**

36.     KAABOO incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

37.     KAABOO stores its financial information, information related to prospective and current partners and group sales clients, attendees, and vendors, marketing strategies, future business development plans, and documents related to the know-how gained from organizing, marketing, and managing prior KAABOO festivals, on the system, access to which is password-protected and restricted. Furthermore, access to this information is granted only on a restricted basis.

38.     This information is not readily ascertainable or generally known in the industry and gives KAABOO an economic advantage over its competitors.

39.     KAABOO has engaged in reasonable efforts to maintain the confidentiality of the subject information.  In addition to storing this information on a password-protected and restricted network, KAABOO has also sought to protect its confidential nature by limiting its employees' use of the information through confidentiality policies and agreements prohibiting the disclosure of such information to third parties.

40.     KAABOO's financial information, information related to prospective and current partners, group sales clients, attendees, and vendors, marketing strategies, future business development plans, and the know-how gained from organizing, marketing, and managing prior KAABOO festivals, therefore, constitute trade secrets under the Defend Trade Secrets Act.

41.     In his capacity as a Senior Vice President of Business Development at KAABOO, Pilsl had access to KAABOO's trade secrets.

42.     Upon information and belief, Pilsl has acquired KAABOO's trade secrets by improper means in breach of his confidentiality agreement and has disclosed and/or is using KAABOO's trade secrets.

43.     As a direct and proximate result of Pilsl's misappropriation of trade secrets, KAABOO has suffered and will continue to suffer, irreparable harm, as well as damages to be proven at trial, but, upon information and belief, at least more than $75,000.

44.     Because KAABOO's remedy at law is inadequate, KAABOO seeks preliminary and permanent injunctive relief. KAABOO is threatened with use and disclosure of its confidential information and trade secrets and with losing its attendees, corporate partners and group sales clients, and its competitive advantage and good will in an amount that may not be possible to determine. Thus, Pilsl must be restrained from use and disclosure of KAABOO's trade secrets, and must be compelled to return KAABOO's trade secrets and confidential information to KAABOO.

45.     Pilsl's actions are willful and malicious, thereby entitling KAABOO to recover punitive damages and an award of attorneys' fees.

## COUNT III
### (Conversion)

46.     KAABOO incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

47.     Pilsl has committed unauthorized assumption and exercised the right of ownership over goods and personal chattels belonging to KAABOO to the exclusion of KAABOO's rights.

48.     As a direct and proximate result of Pilsl's illegal and unlawful conversion, KAABOO has suffered and will continue to suffer, irreparable harm, as well as damages to be proven at atrial, but, upon information and belief, at least more than $75,000.

4820-8741-7938.2

49.     Because KAABOO's remedy at law is inadequate, KAABOO seeks preliminary and permanent injunctive relief. KAABOO is threatened with use and disclosure of its confidential information and trade secrets and with losing its attendees, corporate partners, group sales clients, and its competitive advantage and good will in an amount that may not be possible to determine. Thus, Pilsl must be restrained from use and disclosure of KAABOO's trade secrets, and must be compelled to return KAABOO's trade secrets and confidential information to KAABOO.

WHEREFORE, Plaintiff, KAABOO, respectfully prays for an Order:

(a)     Ordering Defendant to deliver Plaintiff's confidential information and trade secrets (as defined in KAABOO's employee handbook) in Defendant's possession and/or his attorney's possession, custody and control to the undersigned counsel within twenty-four (24) hours, together with a signed representation that Defendant, and his attorney, did not alter, destroy, remove, copy or retain any document, file or information;

(b)     Entering preliminary and permanent injunctions that enjoin Defendant from using, disclosing, or misappropriating KAABOO's trade secrets and confidential information;

(c)     Entering judgment in favor of Plaintiff and against Defendant;

(d)     Awarding Plaintiff compensatory damages commensurate with the value of its lost business and expectancies, its damaged business relationships, its loss of reputation,  the misappropriations of its property and the conversions of its property;

(e)     Awarding Plaintiff the value of the unjust enrichment to Defendant arising from the misappropriation of Plaintiff's trade secrets;

(f)     Awarding Plaintiff restitution and/or the value of the unjust enrichment to Defendant arising from his misappropriation of KAABOO corporate assets;

(g)     Awarding Plaintiff punitive and exemplary damages for the intentional  harm inflicted on Plaintiff by Defendant;

(h)     Awarding Plaintiff the value of its reasonable attorneys' fees and costs; and

(i)     Awarding Plaintiff all such further and other relief as this Honorable Court
        deems just and adequate.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH
LLP**

*/s Ian R. Rainey*

Ian R. Rainey
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Telephone: 303.861.7760
Ian.Rainey@lewisbrisbois.com

Attorneys for Plaintiff
KAABOOWORKS SERVICES, LLC

4820-8741-7938.2                                     15