# CONFIDENTIALITY & INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Assignment Agreement (the "Agreement") is made and entered into this _3_ day of _Feb_ ,_2017_ between Brian Wingerd (the "Employee") and KAABOOWorks Services, LLC (the "Employer"). Employee recognizes the importance of protecting the rights of Employer to inventions, discoveries, ideas, trade secrets, confidential information, and goodwill. Employee further recognizes the importance that Employer places on protecting its rights to inventions, discoveries, ideas, trade secrets, confidential information, and goodwill. Therefore, in consideration of Employee's employment, continued employment, promotion or compensation, as well as Employer's provisions of trade secrets to Employee, Employee and Employer agree as follows:

1. **Definitions.**  For purposes of this Agreement

   1.1.  "The Company Group" means Employer and all of its past, current, or future parent, subsidiary and affiliated entities, successors, licensees and assigns, and any divisions of any of them, expressly including the entities identified on Exhibit A to this Agreement as it may be amended from time to time with notice provided to Employee

   1.2.  The "Company Group's Business" means the current and actively planned businesses of any member of the Company Group as defined on Exhibit A to this Agreement as it may be amended from time to time.

   1.3.  "Invention" means all inventions, improvements, processes, products, designs, original works of authorship, formulas, compositions of matter, computer software programs, Internet products or services, databases, mask works, trade secrets, product improvements, product ideas, discoveries, methods, software, uniform resource locators ("URLs") or proposed URLs, domain names or proposed domain names, trade names, trademarks, copyrights, slogans, artwork or ideas, which may or may not be subject to or able to be patented, copyrighted, registered or otherwise protected by law, throughout the world.

   1.4.  "Company Group Inventions" means any Inventions that Employee makes, conceives, develops, generates, first reduces to practice or creates, either alone or jointly with others, during Employee's employment with Employer and/or using the Company Group's equipment, supplies, personnel, facilities, or Confidential Information (as defined below), whether during or after working hours, and whether or not such Inventions are patentable, copyrightable or able to be protected as trade secrets or otherwise able to be registered or protected by law, that either (1) relate to the Company Group's Business or to the Company Group's actual or demonstrably anticipated research or development; or (2) result from any work performed by Employee for the Company Group relating to the Company Group's Business or to its actual or demonstrably anticipated research or development.

   1.5.  "Confidential Information" means any information (whether in paper or electronic form, contained in Employee's memory, or otherwise stored or recorded), including but not limited to trade secrets, that is not generally known and relates to the Company Group's Business or to its actual or demonstrably anticipated research or

development, if such information is not readily disclosed by inspection of the Company Group's products and services, and if it has been expressly or implicitly protected by the Company Group from unrestricted use by persons not associated with the Company Group. Confidential Information includes, but is not limited to, information relating to the manner and details of the Company Group's operation, organization and management; products; manuals; procedures; techniques; plans of any kind, including without limitation, strategic, short-term, litigation-related, marketing and transaction-related; security measures; artwork; valuation methods; graphic designs; passwords; security codes; best practices; business systems and processes; projects; innovations; and research and technology of any kind; any information regarding persons who have or have had relations with the Company Group, including past, existing or prospective business contacts; actual and prospective customer and client lists and related information; client tracking data; information regarding the Company Group's vendors, brokers, investors, experts, consultants, contractors, customers and professionals (including those persons who are principals, partners (general or limited), members, officers, directors, employees, and agents of the Company Group); personnel information; artist contact information, desires and preferences for appearances/performances; artist fees and cost information; analyses of location and performance space; business/brand partnerships or sponsorships, public relations, marketing, and media information; production costs; existing and potential sponsor information, including contact names; all agreements entered into or contemplated by the Company Group; all products and formulas developed by or for the Company Group, sold by the Company Group or used in the Company Group's Business; programs, databases and computer systems of all kinds, including the data maintained on such systems as well as the software, hardware and documentation supporting such databases or computer systems; product development information; projections and forecasts; information regarding ownership, storage and valuation of client artwork; finance and tax information; budgets; payroll and benefits information; accounting data; profit margins; pricing issues and concessions; payment and credit terms and history; accounts receivable and payable information; acquisition and target information; negotiation notes and strategies; prospective buyer or seller information; and information concerning legal actions and threatened legal actions, claims, investigations or controversies. Confidential Information includes but is not limited to information generated, modified, or obtained by Employee during Employee's employment and information of the Company Group's affiliates, distributors, customers, vendors, consultants, contractors, partners, members, shareholders, investors, employees, and other third parties that was disclosed or entrusted to the Company Group or to Employee in the course of business with the expectation of confidentiality.

## 2. Inventions and Confidential Information

2.1.    Any and all **Company Group Inventions** Employee has made, conceived or developed or may make, conceive or develop, are and will be the exclusive property of the Company Group, and are hereby irrevocably assigned by Employee to the Company Group from the moment of their creation, conception, or fixation in tangible media, except as otherwise specifically agreed by the Company Group in writing. Employee shall promptly disclose to the Company Group in writing all Inventions and Confidential Information generated, conceived, reduced to practice or otherwise acquired by Employee either alone or jointly with others, whether during or after

working hours, during the term of Employee's employment with the Company Group. Employee waives and quitclaims to the Company Group any and all claims, of any nature whatsoever, that Employee may now or hereafter have for infringement of any Inventions assigned to the Company Group by this Agreement.

2.2.   Employee need not assign to the Company Group any rights to Inventions that Employee developed entirely before Employee's employment relationship with any member of the Company Group. Employee has fully disclosed on Exhibit B to this Agreement all Inventions that Employee is claiming to own as of the date of this Agreement. All Inventions not listed on Exhibit B, as well as any Invention related to the Company Group's Business upon which Employee files patent and/or copyright applications from the date of this Agreement until one year after the termination for any reason whatsoever of Employee's employment with any member of the Company Group, will (i) be presumed to have been conceived, generated, or reduced to practice after the execution of this Agreement, and (ii) be deemed to be Company Group Inventions subject to proof to the contrary by good faith, written and duly-corroborated records establishing that (a) such Invention was conceived and made by Employee after termination of Employee's employment or such Invention does not relate to the Company Group's Business or to the Company Group's actual or demonstrably anticipated research or development, and (b) Employee used no Company Group property, time, equipment, facilities, information or personnel with respect to that Invention.

2.3.   Employee acknowledges that the foregoing paragraphs apply equally to copyrights, trademarks, and service marks conceived, created, developed or modified, in whole or in part, by Employee or at Employee's suggestion during the term of Employee's employment with any member of the Company Group, and that such material has been commissioned by the Company Group as a work-for-hire for the benefit of the Company Group under United States Copyright Law (17 U.S.C. §§ 101, *et seq.*) and that the Company Group will be considered the author and owner of such copyrightable works. To the extent any of the Company Group Inventions may not, by operation of law, vest in the Company Group, or if any of the Company Group Inventions is determined not to be a "work made for hire," Employee hereby irrevocably transfers and assigns to the Company Group and agrees to assign in the future (when any such Company Group Inventions are first reduced to practice or first fixed in a tangible medium, as applicable): (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights in any Company Group Invention; and (ii) any and all "Moral Rights" (as defined below) that Employee may have in or with respect to any Company Group Invention. "Moral Rights" means any rights to claim authorship of a Company Group Invention, to object to or prevent the modification of any Company Group Invention, or to withdraw from circulation or control the publication or distribution of any Company Group Invention, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

2.4.   If Employee incorporates any pre-existing intellectual property into any work product created for the Company Group, Employee hereby grants to the Company Group an irrevocable, non-exclusive, fully paid-up license to such incorporated pre-existing intellectual property, together with the right to sublicense the same. For purposes of this Agreement, intellectual property will be considered to be "pre-existing" if such

intellectual property is in existence prior to the effective date of this Agreement. Further, if Employee incorporates any pre-existing intellectual property into any work product created for the Company Group, Employee represents and warrants that Employee has the rights necessary to grant to the Company Group an irrevocable, non-exclusive, fully paid-up license to such incorporated pre-existing intellectual property, together with the right to sublicense the same.

2.5.    Employee shall assist the Company Group in every reasonable way to obtain, perfect, protect, use and enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for Company Group Inventions and Confidential Information in any and all countries. Employee shall execute any documents, do all things and supply all information that the Company Group may reasonably request for use in obtaining, perfecting, protecting, using or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections for Company Group Inventions and Confidential Information in any and all countries. Employee agrees and acknowledges that compliance with the covenants and terms set forth in this Section is considered an important condition of employment with the Company Group and is not conditioned upon the payment of any additional or special consideration. Notwithstanding the foregoing, Employee's obligations under this Section 2.5 will continue beyond the termination of Employee's employment with any member of the Company Group for whatever reason for a period of seven (7) years (provided that the Company Group in its discretion may elect to compensate Employee at a reasonable rate for Employee's time and reimburse the Employee for Employee's pre-approved expenses actually incurred by Employee at the Company Group's request). If the Company Group is unable for any reason whatsoever to secure Employee's signature on any document to which it is entitled under this Section, Employee hereby irrevocably designates and appoints the Company Group, and its duly authorized officers and agents, as Employee's agents and attorneys-in-fact with full power of substitution to act for and on Employee's behalf and instead of Employee, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by Employee. The foregoing is deemed a power coupled with an interest and is irrevocable. Employee further agrees not to assist any third party in contesting or attacking the Company Group's rights in and/or to any copyright, patent, trademark or other trade secret or confidential or proprietary information, except pursuant to valid subpoena or court order.

2.6.    Unless otherwise stated, the obligations of this Section 2 will continue beyond the termination of Employee's employment with any member of the Company Group with respect to Company Group Inventions, whether patentable or not, conceived or made by Employee during the period of Employee's employment, and will be binding upon Employee's assigns, executors, administrators and other legal representatives.

## 3.  Nondisclosure and Non-Use of Confidential Information

3.1.    Unless authorized in writing by the Company Group in its sole discretion, Employee will not, directly or indirectly, disclose or use any Confidential Information for Employee's own benefit or for the benefit of any other individual or entity, during the term of Employee's employment and for a period of seven (7) years thereafter (or for so long as information remains Confidential Information, if shorter). If Employee has any questions as to whether information is Confidential Information, or to whom, if

anyone, any Confidential Information may be disclosed, Employee should ask Employee's direct supervisor, Employer's Chairman and CEO, President, or Chief Operations and Financial Officer. Employee further agrees, for a period of seven (7) years after the termination of Employee's employment with Employer for any reason whatsoever, not to accept any employment or other engagement that would, by the nature of the position, inevitably require the use or disclosure of Confidential Information by Employee.

3.2.    Employee shall promptly notify Employer if Employee is questioned by anyone not employed by or affiliated with the Company Group or by an employee of or a consultant to the Company Group not authorized to receive such information, in regard to any Confidential Information or any other secret or confidential work of the Company Group, or concerning any fact or circumstance relating thereto, or if Employee becomes aware of the unauthorized accessing or use of the Company Group's premises, equipment, personnel, time, or Confidential Information by any party, whether competitive with the Company Group or not.

3.3.    If, at any time during Employee's employment or thereafter, Employee receives a request to disclose any Confidential Information, including under the terms of a subpoena, court order, or other governmental order, Employee shall notify Employer immediately of the details of the request, and will consult with Employer on the advisability of taking legally available steps to resist or narrow such request. If disclosure of such Confidential Information is required to prevent Employee from being held in contempt of court or subject to other penalty, Employee will furnish only such portion of the trade secrets and other proprietary and confidential information as, in the written opinion of counsel satisfactory to the Company Group, Employee is legally compelled to disclose, and Employee will use Employee's best efforts to assist the Company Group in obtaining an order or other reliable assurance that confidential treatment will be accorded to the disclosed Confidential Information.

3.4.    Employee hereby acknowledges that the Company Group has informed Employee, in accordance with 18 U.S.C. § 1833(b), that Employee may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret where the disclosure (a) is made (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (2) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

3.5.    Employee shall not use or disclose any confidential, trade secret or proprietary information of any prior employer or other individual or entity in connection with Employee's employment with any member of the Company Group. Employee will not bring any such information onto the Company Group's premises, nor will Employee introduce into the Company Group's computers, systems, electronic communications, or data network, any unpublished document or confidential information belonging to any such employer, person, or entity unless consented to in writing by such employer, person or entity and by the applicable member of the Company Group.

3.6.    Employee will use Employee's best efforts to prevent the unauthorized use or accessing of any laptop or personal computer, peripheral device, cell phone,

SmartPhone, personal digital assistant (PDA), software or related technical documentation that Employer issues to Employee, permits Employee to use, or on which Employee maintains Confidential Information.

## 4.   Documents and Tangible and Intangible Property

4.1    All documents, memoranda, notes, files, information and other tangible or intangible property (including all copies and electronic or digital files) relating in any way to Employee's work for the Company Group and/or the Company Group's Business (including but not limited to Confidential Information) that are conceived or generated by Employee, or obtained by or made available to Employee during the course of Employee's employment, will remain the exclusive property of the Company Group. Employee agrees to return all such property and information, including all copies, summaries, compilations, reproductions, and computer data and records, as well as all tangible property, including without limitation Company Group-owned SmartPhones, BlackBerries, cellphones, tablets, computers and accessories, jump drives, thumb drives, memory sticks, external hard drives, peripheral devices, disks, and other external storage devices, to Employer immediately upon termination of Employee's employment or at such earlier time as Employer may request.

4.2    Employee is permitted to use personal electronic devices, SmartPhones, BlackBerries, computers and the like ("Personal Equipment") to perform Employee's duties, including receiving, reviewing, sending and working on emails and other Company Group information and/or documents. Employee understands that Employee is not required to use Personal Equipment to perform Employee's duties. Employee understands that the use of personal devices for business purposes may be revoked at any time if Employer deems Employee to have abused it. Employee acknowledges that Employee alone will be responsible for service charges, repair, and replacement of Employee's Personal Equipment. Employee further understands, consents, and agrees that if Employee elects to use Employee's Personal Equipment to perform duties for the Company Group, the Company Group has the right, upon the termination of Employee's employment or at such earlier time as the Company Group may elect, to inspect Employee's Personal Equipment to ensure that Employee is handling Confidential Information appropriately and with a proper degree of security, to remove Confidential Information if necessary, and to ensure that Employee is not in breach of this Agreement. Employee has the right to be present for any such inspection. After the conclusion of any such inspection, if the Company Group determines that it was unable to conclude that Employee was handling Confidential Information appropriately and with a proper degree of security, that it was unable to conclude that no Confidential Information remains on the Personal Equipment, or that it was unable to conclude that Employee is not in breach of this Agreement, then the Company Group has the right to "wipe" Employee's Personal Equipment remotely or otherwise to permanently remove all Confidential Information from that Personal Equipment. Employee further understands that the process of "wiping" is not an exact one, and that some or all of Employee's personal information, contacts, pictures, videos, applications, music, settings, and other data (collectively, "Personal Data") may be permanently deleted from Employee's Personal Equipment or irreparably damaged as a result. If Employee elects to use Employee's Personal Equipment for work purposes, Employee expressly understands and assumes the risk of loss of, or damage to, such Personal Data and agrees to hold the Company Group harmless from any such loss and/or damage.

4.3     Employee agrees to promptly provide Employer with any passwords, source codes, administrative access, or other information in Employee's possession with respect to work performed for the Company Group upon request, whether during or after the termination of Employee's employment for any reason whatsoever. Employee also agrees promptly to take all steps necessary to ensure the transfer to the appropriate member of the Company Group of any accounts, including online social media accounts such as Twitter accounts and blogs, maintained by Employee for or on behalf of, or as a representative of, the Company Group.

4.4     Promptly upon termination of Employee's employment for any reason, Employee will cease representing himself/herself as a current employee of Employer or any member of the Company Group, including but not limited to updating any profile maintained by Employee on professional networking sites such as LinkedIn, and updating information maintained on Employee by professional associations, insurers, and licensing authorities. Employee also agrees that, promptly upon termination of employment or at such earlier time as the Company Group may request, Employee will resign from any and all positions Employee occupies as a representative of the Company Group.

## 5.   Reasonableness of Covenants

Employee acknowledges that the covenants contained in this Agreement are reasonable and based upon Employee's education, experience and training, these covenants will not prevent Employee from earning a livelihood if Employee is no longer employed with Employer for whatever reason. The existence of a claim, charge, or cause of action by Employee against any member of the Company Group will not constitute a defense to the enforcement by Employer of any provision of this Agreement.

## 6.   Governing Law, Venue, and Injunctive Relief

This Agreement will be governed by, and construed and interpreted in accordance with, the substantive laws of the state of Colorado, without giving effect to its conflicts of laws principles. Any action relating in any way to or arising from this Agreement or its interpretation must be brought only in a court of competent jurisdiction located in the County in Colorado in which the Company Group's headquarters are then located, and Employee waives any and all objections Employee might otherwise have to jurisdiction and venue in such court. Employee understands that the Company Group will suffer irreparable harm if Employee fails to comply or threatens not to comply with the terms of this Agreement, and that monetary damages may not be adequate to compensate the Company Group. Employee therefore agrees that the Company Group, in addition to any other remedies available to it, including the right to seek money damages, will be entitled to injunctive relief, without the posting of a bond or security, to enforce this Agreement.

## 7.   Severability and Interpretation

If any provision or part of any provision of this Agreement is held invalid by a court of competent jurisdiction, the remaining provisions will be enforceable according to their terms. Further, if any provision or part of any provision is held to be overbroad as written, the parties expressly request that the court modify the offending part to the minimum extent necessary to make the provision enforceable and consistent with the parties' intent, as expressed in this Agreement.

8.   **Waiver; Modification**

A party's waiver or failure to enforce any term of this Agreement in one instance will not act as a waiver of its rights under this Agreement with respect to any other violation of the same or a different term. Any waiver or modification of any provision of this Agreement must be written and signed by both parties in order to be effective.

9.   **Other Agreements**

Employee represents that Employee has not entered into any agreements inconsistent with the terms of this Agreement, and Employee will not do so. Employee certifies by entering into this Agreement, and by accepting or continuing employment with Employer, that Employee is not in breach of any other agreement to which Employee is a party.

10.   **Entire Agreement**

This Agreement contains the complete agreement between the parties concerning the subject matter contained herein and supersedes all prior negotiations and agreements between the parties, written or oral, concerning such subject matter. Neither party has made any representations that are not contained herein on which either party has relied in entering into this Agreement. This Agreement may not be modified or amended except by a writing signed by both parties and specifically referencing this Agreement.  The parties represent and affirm that this Agreement is intended to be applied and enforced in addition to, and not in lieu of, the Non-Competition & Non-Solicitation Agreement entered into by the parties on ____Feb 3_____, _2017_.

11.   **Successors and Assigns; Survival**

This Agreement may not be assigned by Employee, but will be binding on Employee's heirs, beneficiaries, and legal representatives. This Agreement may be transferred by Employer to its successors, affiliates, and assigns, whether by operation of law or otherwise, without the need for Employee's written consent. The obligations contained in this Agreement survive the termination of Employee's employment.

12.   **Attorneys' Fees and Indemnification**

The prevailing party in any action or proceeding related to this Agreement will, in addition to any other remedies, be entitled to the actual amount of his, her, or its reasonable attorneys' fees and all costs in such matter. Further, Employee agrees to indemnify and hold the Company Group harmless from any loss or damage resulting from Employee's breach of this Agreement and any misrepresentations made herein by Employee.

13.   **Review and Consultation with Counsel**

By signing below, Employee certifies and acknowledges that Employee has carefully read all of the provisions of this Agreement, and Employee voluntarily and knowingly enters into this Agreement. Employee expressly acknowledges that Employee has had the opportunity to consult with counsel of Employee's choosing in connection with the terms of this Agreement. The general rule that any ambiguous provision of this Agreement should be construed against the drafter will not apply.

14. **No Guarantee of Continued Employment**

Employee acknowledges and understands that this Agreement does not confer any right with respect to employment or continued employment with Employer or any other member of the Company Group, and that it does not in any way limit or interfere with any right or power Employee or Employer have to terminate Employee's employment or service at any time and for any reason.

15. **Condition of Employment**

Employee understands that entering into this Agreement is a condition of Employee's employment and/or continued employment with Employer.

*(signature blocks on following page)*

**IN WITNESS WHEREOF**, the undersigned parties have caused this Agreement to be executed by themselves or by their duly authorized representatives as of the day and date first written above and agree to be bound by all of the Agreement's provisions.

EMPLOYER

By: _____

Print
Name: Robert Walker

Title: Authorized Person

EMPLOYEE

By: _____

Print
Name: Brian Wingerd

**EXHIBIT A**

Definition of the "Company Group" and the "Company Group's Business":

For purposes of this Agreement, the "Company Group" includes the following entities, each of which is engaged in the business described below (collectively referred to as the "Company Group's Business"):

- KAABOOWorks Services, LLC:  a live-music and entertainment company focused on (1) music festivals, concerts and other live music events that (i) include five or more musical acts; and (ii) enjoy five thousand or more attendees and (iii) are located within 500 miles of the Del Mar Fairgrounds in Del Mar, California or any other festival produced by KAABOO or any affiliate of KAABOO; and (2) music festivals of any genre similar in concept to the KAABOO Festivals located anywhere in the world. For the avoidance of doubt, the concept for the KAABOO Festivals is a high-end music, culinary, and lifestyle festival targeted to an audience of 25 years to 60 years of age.

**EXHIBIT B**

Wingerd                          Brian
Last Name                        First Name                          M.I

For purposes of this Exhibit B, "Invention" means any invention, improvement, process, product, design, original work of authorship, formula, composition of matter, computer software program, Internet product or service, database, process, protocol, methodology, mask work, trade secret, product improvement, product idea, new product, discovery, method, software, uniform resource locator or proposed uniform resource locator (URL), domain name or proposed domain name, trade name, trademark, service mark, copyright, slogan, design, and artwork or idea, including any and all patents, patent applications, or other rights connected thereto.

Employee hereby discloses the following Inventions developed or conceived by Employee, alone or jointly with others, in which Employee claims a right or interest (identify which, if any, are confidential):

_____

_____

_____

_____

_____

_____

_____