IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02530-CMA-KLM

KAABOOWORKS SERVICES, LLC,

    Plaintiff,

v.

BRIAN PILSL,

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss** [#21][1] (the "Motion").[2] Plaintiff filed a Response [#25] in opposition to the Motion, and Defendant filed a Reply [#40]. The Motion has been referred to the undersigned for a recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). *See* [#37]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#21] be **GRANTED in part** and **DENIED in part**.

---

[1] "[#21]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court has also considered Defendant's Memorandum of Law in Support of Motion to Dismiss [#20] (the "Brief") which was incorrectly filed on the electronic docket as a Brief in Support of Unopposed Motion for Leave to Restrict.

## I. Background

The well-pled facts of the Complaint [#1] are construed in a light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015). Plaintiff is a Delaware limited liability company with its principal place of business in Colorado. *Compl.* [#1] ¶ 4. Plaintiff is a live-music and entertainment company that organizes high-end music and adult cultural festivals in California with plans to expand geographically. *Id.* ¶ 12. Defendant served as Plaintiff's Senior Vice President of Business Development from October 1, 2015, until October 10, 2017. *Id.* ¶ 2. During his employment, Defendant lived and worked primarily from his home in Florida while traveling often to Colorado and maintaining constant communication with the Colorado office. *Id.* ¶¶ 6,17.

Plaintiff "fiercely protects" proprietary information about its business and operating system to protect its competitive advantage. *Id.* ¶ 13. Information including the identities of partners for upcoming events, prospective partners and their primary contacts, pricing information, attendee information, and financial information is protected by several procedures. *Id.* These procedures include notifying each employee in his offer letter that he will be required to sign a confidentiality agreement, providing only restricted access to proprietary information, outlining the company's confidentiality requirements and the importance of confidentiality to Plaintiff's business model in the Employee Handbook, withdrawing access to restricted information upon termination of any employee's employment, and requiring each employee to certify that he has returned all confidential information on his departure from the company. *Id.* ¶ 15.

As Senior Vice President of Business Development, Defendant had and allegedly retains access to nearly all proprietary information listed above. *Id.* ¶¶ 16, 25. Specifically,

Plaintiff maintains that Defendant has access to:

> "(1) the entire attendee list for the [Del Mar, California] festival, including their contact information, preferences, and demographic information; (2) the festival budget information; (3) the names of prospective partners; (3) information about the pricing and other deal terms offered to the existing corporate partners; (4) analyses of the festival results; (5) prospective locations and plans for expansion of the KAABOO brand; (6) hospitality pricing information; (7) contract templates for hospitality, culinary, and corporate partnerships; (8) sales team reports; (9) strategies for identifying corporate partners; (9) payment and financial information related to corporate partners; (10) information related to specific needs and preferences of the corporate partners; and (11) sponsorship pricing, sales data and sales strategy."

*Id.* ¶ 16. Plaintiff further contends that Defendant has certain confidentiality obligations with KAABOO, namely that Defendant was aware of what information was considered confidential and that he may not use or disclose that information. *Id.* ¶ 19. According to Plaintiff, Defendant also knew that on termination of his employment he would be required to return any confidential company information. *Id.* ¶ 20.

In October 2017, Plaintiff terminated Defendant's employment and requested that he sign a certification acknowledging that he had returned all company "property in his possession, including confidential, proprietary, and trade secrets information, in any form (electronic and hard copy) and that he did not keep copies of such information." *Id.* ¶ 24. Defendant did not sign the certification and informed the CEO of KAABOO that he planned to restart his prior business named Sprocket, which would be a potential competitor with KAABOO. *Id.* Plaintiff maintains that Defendant has not returned KAABOO's property and that he remains in possession of trade secrets and confidential information. *Id.* ¶ 25.

Plaintiff has asserted three claims against Defendant. First, Plaintiff asserts a claim for violation of the Colorado Trade Secrets Act. *Id.* ¶¶ 26-35. Second, Plaintiff asserts a

claim for violation of the Defend Trade Secrets Act. *Id.* ¶ ¶ 36-45. Finally, Plaintiff asserts that Defendant converted its property. *Id.* ¶ 46-49. Plaintiff seeks an Order requiring Defendant to deliver Plaintiff's confidential information and trade secrets; entering preliminary and permanent injunctions that enjoin Defendant from using, disclosing, or misappropriating Plaintiff's trade secrets and confidential information; entering judgment in favor of Plaintiff and against Defendant; awarding Plaintiff compensatory damages; awarding Plaintiff the value of unjust enrichment to Defendant; awarding Plaintiff punitive and exemplary damages for the intentional harm inflicted on Plaintiff by Defendant; awarding Plaintiff its reasonable attorneys' fees and costs; and awarding Plaintiff all such further and other relief that is just and adequate. *Id.* at 14.

## II. Standard of Review

### A. Fed. R. Civ. P. 12(b)(2)

The Court analyzes an argument that the Court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984). Before trial, a plaintiff need only make a prima facie showing of jurisdiction. *Id.* The Court accepts the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether the plaintiff has made a prima facie showing that the defendant is subject to the Court's personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186,

1189 (D. Colo. 2004).  However, any factual disputes are resolved in the plaintiff's favor.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

Exercise of personal jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements.  *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).  Colorado's long-arm statute "is to be interpreted as extending jurisdiction of our state courts to the fullest extent permitted by the due process clause of the United States Constitution."  *Mr. Steak, Inc. v. Dist. Court In & For Second Judicial Dist.*, 194 Colo. 519, 521 (1978).  Therefore, if jurisdiction is consistent with the due process clause, Colorado's long-arm statute authorizes jurisdiction over a nonresident defendant.  *See id.*  Under the due process clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."  *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**B.    Fed. R. Civ. P. 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff,

*Barnes*, 783 F.3d at 1191-92, conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. Analysis

#### A. Fed. R. Civ. P. 12(b)(2)

Here, Defendant contends that Plaintiff does not allege facts to demonstrate the Court's general or specific jurisdiction over him. *Brief* [#20] at 3. Defendant argues that he did not "purposefully avail" himself of Colorado's benefits and enjoyments because his travels and contacts with the State were only in furtherance of his employment with Plaintiff. *Id.* Defendant further contends that general jurisdiction is lacking because his contacts were "limited" and that any exercise of jurisdiction over him would offend traditional notions of fair play and substantial justice. *Id.* at 4. In response, Plaintiff directs the Courts's attention to a number of ways in which Defendant has had contacts with Colorado, specifically through directing his activities toward Plaintiff, a Colorado resident, and Defendant's frequent travels to the State. *Response* [#25] at 10. Plaintiff also maintains that Defendant's contacts with Colorado were "continuous and systematic" so as to allow general jurisdiction to stand. *Id.* at 9. Because, as explained below, the Court finds that it has specific jurisdiction over Defendant, it need not address the parties' arguments regarding general jurisdiction.

Specific jurisdiction may be asserted if a defendant has "purposefully directed" his

activities toward the forum state, and if the lawsuit is based on injuries which "arise out of" or "relate to" the defendant's contacts with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient that, notwithstanding [his] lack of physical presence in the state, the state's exercise of sovereignty over [him] can be described as fair and just." *Dudnikov*, 514 F.3d at 1070. To implement this principle, courts typically make three inquiries: (1) whether the defendant purposefully directed his activities at the forum state or residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

Thus, Plaintiff must here provide sufficient facts to demonstrate that Defendant purposefully directed his activities at Colorado or residents of Colorado. *Id.* To this end, Plaintiff alleges that Defendant purposefully engaged in activities to cause harm to Plaintiff, a Colorado-based company, by "failing to return and protect Plaintiff's trade secrets." *Response* [#25] at 10. Plaintiff further argues that notions of fair play and substantial justice are not offended by the Court's exercise of personal jurisdiction over Defendant in this case. *Response* [#25] at 10.

With respect to the first inquiry, Plaintiff has shown that Defendant directed activities toward the residents of Colorado and thus "purposefully availed [himself] of the protection and benefits of the laws" of Colorado. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). While a contract with an out-of-state party *alone* does not establish sufficient minimum contacts, courts look to prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to

determine when a defendant has purposefully established minimum contacts with the forum through a contract. *See Burger King*, 471 U.S. at 479. Here, Defendant was an employee of Plaintiff, a Colorado-based company. *Compl.* [#1] ¶ 2. An employment relationship is even closer than a contractual relationship and evidences Defendant's intended future consequences of cultivating a link between himself and a Colorado-based company. *Cf. N.L.R.B. v. United Ins. Co. of Am.*, 390 U.S. 988, 991 (1968) (differentiating an independent contractor relationship and an employment relationship by fact that employees "have a permanent working arrangement with the company under which they may continue as long as their performance is satisfactory"). The actual terms of at least one contract entered into by Defendant and Plaintiff, the KAABOO Performance Recognition Plan ("KPRP"), identified Denver County, Colorado as the sole jurisdiction for disputes. *Response* [#25] at 6. Although this case does not involve a dispute arising out of the KPRP, this clause further bolsters Plaintiff's claim that Defendant was sufficiently aware that his employment activities had a direct connection to Colorado. Indeed, Defendant traveled often to Colorado for business meetings. *Id.* at 7. Although Defendant contends that these meetings were a "requirement of his job with Plaintiff," Defendant willingly entered into his employment relationship, which he knew would center largely around Plaintiff's Colorado headquarters. *Brief* [#20] at 3. Not only did Defendant intend to continue his relationship with a Colorado company, but he "purposefully availed [himself] of the protection and benefits of the laws" of Colorado. *Botefuhr*, 309 F.3d at 1272. Because Defendant "'purposefully derived benefit' from [his] interstate activities, it may well be unfair to allow [him] to escape having to account in other States for consequences that arise proximately from such activities." *Burger King*, 471 U.S. at 473-74 (quoting *Kulko v. California Superior*

*Court*, 436 U.S. 84, 96 (1978)). Finally, the specific actions alleged, i.e., not returning confidential information, were directed toward Plaintiff, a Colorado resident. As Plaintiff points out, much of the confidential information was received by Defendant in Colorado and, conceivably, any returned information would have been transmitted to Plaintiff in Colorado. *See Response* [#25] at 6. Defendant's concern that "virtually every national employer could require its employees to defend themselves where the company is headquartered" is allayed by the fact that courts have long rejected "mechanical" tests to determine personal jurisdiction. *See Int'l Shoe*, 326 U.S. at 319. In this case, Defendant has sufficiently availed himself of the benefits and protections of Colorado and has directed numerous activities toward the forum State and one of its residents, i.e., Plaintiff.

With respect to the second inquiry, taking the allegations of the Complaint as true, Plaintiff has shown that Defendant's activities directed toward Colorado have given rise to this suit. In a broad sense, this dispute arises from Defendant's employment relationship, an activity connected to Colorado in the ways described above. In a narrower sense, the injury allegedly suffered by Plaintiff from Defendant failing to return confidential information is likewise felt by a Colorado company. In either level of abstraction, the injuries allegedly suffered by Plaintiff were proximately caused by Defendant's activities directed toward Colorado. Without commenting on the legitimacy of Plaintiff's claims, the Court finds based on these considerations that Plaintiff has sufficiently alleged that its injuries arose from Defendant's contacts with Colorado.

With respect to the third inquiry, an exercise of personal jurisdiction in this case does not offend traditional notions of fair play and substantial justice. Because the Court has found that Plaintiff has sufficiently alleged that Defendant purposefully availed himself of

Colorado's laws, and that Plaintiff's injuries arose from Defendant's activities aimed toward Colorado, Plaintiff has pled a prima facie case for personal jurisdiction. The Court can exercise jurisdiction over Defendant in this case unless exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Dudnikov,* 514 F.3d at 1070. With minimum contacts established, it is incumbent on Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1080. Several factors are considered when determining if exercising jurisdiction offends traditional notions of fair play and substantial justice: "the burden on the defendant; . . . the forum State's interest in adjudicating the dispute; . . . the plaintiff's interest in obtaining convenient and effective relief; . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. . . ." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Defendant argues that if jurisdiction were found in Colorado, he and his wife would face "financial harm" from defending two lawsuits. *Reply* [#40] at 7. Plaintiff filed this suit against Defendant in Colorado and a separate suit against Defendant's wife in Florida. *Motion* [#21] ¶ ¶ 1, 2. Defendant's wife was also an employee of Plaintiff before her employment was terminated. *Id.* ¶ 4. Defendant believes that Plaintiff has "ulterior motive[s]" for suing him and his wife in different states. *Brief* [#20] at 7. Namely, Defendant believes that Plaintiff seeks to cause the couple financial harm through expensive litigation. *Id.* While the inconvenience of litigating in Colorado and the potential financial harm to Defendant may be considered, the Court rejects Defendant's contention that his wife's litigation costs and Plaintiff's alleged "ulterior motive" to harm the couple has any bearing on whether jurisdiction may properly

be found. *See id.* Furthermore, Plaintiff points out that "relevant witnesses and materials are located in Colorado" and because the alleged harm incurred was located in Colorado, Colorado has an interest in adjudicating the dispute. *Response* [#25] at 10. The inconvenience and cost of litigating out-of-state are no small burdens; however, they do not amount to unconstitutional burdens barring an exercise of personal jurisdiction, especially when coupled with the legitimate counteracting concerns of Plaintiff. Accordingly, the Court concludes that it has personal jurisdiction over Defendant.

**B.    Fed. R. Civ. P. 12(b)(6)**

The Court next addresses Defendant's argument for dismissal of the Complaint pursuant to Rule 12(b)(6).[3] To satisfy the requirements of Rule 12(b)(6), "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero*, 510 F.3d at 1200 (citing *Bell Atl. Corp.*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678.

    **1.    Count I: Violation of the Colorado Trade Secrets Act**

Count I of Plaintiff's Complaint asserts a violation of the Colorado Trade Secrets Act. *Compl.* [#1] ¶¶ 26-35. To state a claim for misappropriation of trade secrets, Plaintiff must allege (1) that Plaintiff possessed a valid trade secret, (2) that the trade secret was disclosed or used by Defendant without consent, and (3) that Defendant knew, or should

---

[3] Although Plaintiff argues that Defendant's Motion to Dismiss [#21] should be converted into a request for summary judgment due to the Affidavits [#19-1] attached to Defendant's Motion [#21], the Court declines to convert the Motion. The Court has not relied on any documents other than the Complaint [#1] in evaluating the Rule 12(b)(6) claims.

have known, that the trade secret was acquired by improper means. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). *See also Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939 (D. Colo. Feb. 22, 2018). Plaintiff sufficiently alleges elements (1) and (3) by alleging that the information at issue consisted of trade secrets and that Defendant improperly retained company information after his employment was terminated. *Compl.* [#1] ¶ ¶ 13, 14, 15, 19, 20, 25.

However, Plaintiff makes no allegations regarding element (2), that Defendant has used or disclosed the trade secrets. Although specific facts are not necessary to satisfy Rule 12(b)(6)'s requirements, the Complaint is conclusory on this point because Plaintiff does not plausibly elaborate on its "information and belief" regarding misappropriation. *Id.* ¶ 32. In *RE/MAX, LLC v. Quicken Loans, Inc.*, the court found that "without specific factual averments of disclosure or use" the court could not assume that improperly obtained trade secrets were being used or disclosed. 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018) (internal citations omitted). Because damages may only be awarded for actual misappropriation, the Court **recommends** that the Motion [#21] be **granted** to the extent that Plaintiff's Complaint [#1] seeks compensatory damages, unjust enrichment damages, and exemplary damages, and that the portion of the claim seeking those damages be **dismissed without prejudice**. *Crump v. James Irwin Charter Sch.*, No. 12-cv-00008-PAB-KLM, 2012 WL 1247186, at *3-4 (D. Colo. Mar. 21, 2012) (dismissing claims pursuant to Rule 12(b)(6) without prejudice). *See Reynoldson v. Shillinger*, 907 F.2d 126, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial

issues").

However, Plaintiff clearly states its belief that Defendant will eventually use or disclose confidential information, especially given the potential rebirth of Defendant's company, Sprocket. *Compl.* [#1] ¶ 34. "Temporary and final injunctions including affirmative acts may be granted on such equitable terms as the court deems reasonable to *prevent* or restrain actual or *threatened* misappropriation of a trade secret." Colo. Rev. Stat. § 7–74–103 (1986) (emphasis added). The existence of a threat of misappropriation is plausible from the Complaint, given the termination of Defendant's employment with Plaintiff, his potentially competitive business, and his allegedly improper retention of confidential information. *Compl.* [#1] ¶ 24. Accordingly, the Court **recommends** that the Motion [#21] be **denied** with respect to Count I to the extent that it seeks injunctive relief.

### 2. Count II: Violation of the Defend Trade Secrets Act

Count II asserts that Defendant has violated the Defend Trade Secrets Act. *Compl.* [#1] ¶ ¶ 36-45. If one "with intent to convert a trade secret . . . knowingly steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information[,] . . . " that person has violated § 1832. 18 U.S.C. § 1832(a)(1) (2016).

Plaintiff alleges in its Complaint that Defendant has retained confidential company information despite Plaintiff's policy that such information must be returned after termination of employment and Plaintiff's requests that Defendant comply with that policy. *See Compl.* [#1] ¶ ¶ 21, 25. Plaintiff also alleges that Defendant intends to convert these trade secrets for the benefit of his own business, Sprocket. *Id.* ¶ 24. Therefore, Plaintiff sufficiently

alleges facts which demonstrate that Defendant plausibly violated § 1832. Accordingly, the Court **recommends** that Motion [#21] be **denied** with respect to Count II.

### 3. Count III: Conversion

Finally, Count III asserts that Defendant converted Plaintiff's property. *Compl.* [#1] ¶ ¶ 47-49. Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Byron v. York Inv. Co.*, 296 P.2d 742, 745 (Colo. 1956). To assert a claim of conversion under Colorado law, Plaintiff must show: (1) Plaintiff has a right to the property at issue; (2) Defendant has exercised unauthorized dominion or ownership over the property; (3) Plaintiff has made a demand for possession of the property; and (4) Defendant refuses to return it. *See Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984).

The court finds that Plaintiff alleges facts which plausibly demonstrate each element of conversion. First, it is undisputed that Plaintiff's Complaint alleges that Plaintiff has a right to the property at issue, that Plaintiff has made a demand for possession of the property, and that Defendant did not heed these requests. *Compl.* [#1] ¶ ¶ 14, 25, 25. Defendant argues that the conversion claim must fail nonetheless because "Plaintiff has alleged only that [Defendant] has possession of confidential information" which does not amount to dominion or ownership of the information. *Brief* [#20] at 8. However, in another case involving a motion to dismiss a claim for conversion of trade secrets, this court held that dominion or ownership was plausible because the complaint alleged that the defendant could access the trade secrets at any time, even though the plaintiff had attempted to delete the information. *Abbott Labs. v. Finkel*, No. 17-cv-00894-CMA, 2017 WL 5517399

(D. Colo. Nov. 17, 2017). Likewise, in this case, demonstrating that Defendant has dominion or ownership over the property is plausible because Plaintiff alleges that Defendant possesses the information in electronic and hard copies, meaning Defendant has access to the information at any time, in spite of attempts by Plaintiff to prevent that access. *Compl.* [#1] ¶ ¶ 24, 25. Defendant does not dispute that Plaintiff has sufficiently alleged the other elements of conversion under Colorado law.

Accordingly, the Court respectfully **recommends** that the Motion [#21] be **denied** with respect to Count III.

### IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#21] be **GRANTED in part and DENIED in part** as follows:

(1) **denied** to the extent Defendant moves pursuant to Rule 12(b)(2), and

(2) **granted in part and denied in part** to the extent Defendant moves pursuant to Rule 12(b)(6), as follows:

  (a) **granted** to the extent that Count I **be dismissed without prejudice** with respect to damages only under Colo. Rev. Stat. § 7–74–103,

  (b) **denied** to the extent that Count I seeks injunctive relief,

  (c) **denied** with respect to Count II, and

  (d) **denied** with respect to Count III.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 14, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge